IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | | |
|---|---|---|
| ALFA SPECIALTY INSURANCE CO. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 11-6118-CV-SJ-HFS |
| | ) | |
| MADDISON ELLIS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

Plaintiff, Alfa Specialty Insurance Corporation, has filed a motion for summary

judgment. Alfa commenced this action seeking a declaratory judgment that with respect

to claims of negligent driving by a decedent, asserted in an underlying action, it is not

required to provide coverage or indemnification to the late Daniel L. Brill[1] or coverage to

claimant, Jeri Campbell, individually or as personal representative of James O. Blizzard,

a passenger killed in a wreck.

Factual And Procedural Background

This dispute arises from a motor vehicle accident that occurred in March 2001, in

Andrew County, Missouri which resulted in the deaths of the driver, Daniel L. Brill, and

the passenger, Blizzard. (Alfa, SUMF: ¶¶ 2-3).  At the time of the accident, Brill was

---

[1] Upon motion by Alfa (doc. 24), Keith Schreiber was appointed defendant ad litem for Brill. (Order dated
November 9, 2012-SOW). Subsequently, in response to a show cause order directing Schreiber to address
why he had not filed an answer or otherwise appeared in this action, he stated that Alfa was the real
defendant in this action, and that  because no estate was opened for Brill and the time in which to do so had
expired, he felt "no obligation to maximize any assets available for recovery." (Doc. 37, ¶ 4). Schreiber
further stated that he advised counsel for the parties of his intention to not respond to the summons, and he
requested that the issue of coverage be decided based on the pleadings submitted. (Id: ¶¶ 5-6).

driving a 1997 Pontiac Grand Am, owned by insured Maddison Ellis[2] under a Missouri

Private Passenger Auto Policy, number 14-42-002766741, issued by Alfa. (Id: ¶¶ 4-6).

After commencement in Andrew County, the underlying action, *Jeri Campbell v.*

*The Estate of Daniel L. Brill, deceased, Case No. 11BU-CV03920*, was transferred to the

Circuit Court of Buchanan County, Missouri; in August 2012, the parties dismissed the

action without prejudice. (Complaint: ¶ 5).[3] Alfa seeks a declaration of its insurance

coverage obligations to Brill who has sought indemnification under the Policy and with

respect to claims asserted against Brill by claimant. (Id: ¶¶ 14, 16-17).

At the time of the accident Alfa had issued an automobile insurance policy to

Ellis, entitled "Part A: Liability Coverage," which provided in part:

> We will pay damages, other than punitive or exemplary, for bodily injury or
> property damage for which any insured becomes legally responsible because of an
> auto accident …
> (Motion for Summary Judgment, pg. 3, ¶ 7; see Alfa Policy, Exh. 3, pg. 7).

Because Brill was expressly excluded from coverage in the Ellis insurance,

indirect coverage is sought by claimant on behalf of Blizzard under the uninsured

motorist portion of the policy, as discussed below.

Standard of Review

Summary judgment is proper where there is no genuine issue as to any material

fact and the moving party is entitled to judgment as a matter of law. Bolin v. Progressive

Northwestern Ins. Co., 2009 WL 1010770 *6 (E.D.Mo.); citing, Fed.R.Civ.P. 56( c ). The

---

[2] On April 20, 2012, claimant, as personal representative of Blizzard, stipulated that she did not and would not claim that Ellis negligently entrusted the vehicle to Brill. (Doc. 14, ¶¶ 1-4). Because claimant did not intend to sue Ellis for personal liability due to the accident, she requested that Ellis be dismissed as a named defendant in the action. (Id: ¶¶ 5-7). On May 9, 2012, Alfa agreed and stipulated that Ellis should be dismissed from this action. (Doc. 17).
[3] In the underlying action, claimant alleged that Brill negligently and recklessly operated the vehicle causing fatal injuries and damages to Blizzard and that as a result of Brill's negligence Blizzard suffered injuries and damages. (Alfa's SUMF: ¶¶ 3, 5).

moving party has the burden to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. <u>Id</u>. Once the movant has met this burden, the non-movant may not rely on mere denials or bare allegations, but must point to specific facts that raise a triable issue. <u>United Fire & Casulty Company v. Lipps</u>, 2009 WL 2143766 * 3 (E.D.Mo.). The non-movant must set forth specific facts, by affidavit or otherwise, sufficient to raise a genuine issue of material fact for trial. <u>Id</u>.

Alfa states, and claimant does not dispute that Missouri law applies to this diversity action, and that the task of a federal court sitting in diversity is to attempt to predict how the forum state's highest court would resolve the issues. <u>Id</u>. Under Missouri law, the insured has the burden of proving coverage under the insurance policy, and the insurer has the burden of showing that an exclusion from coverage applies. <u>Id</u>.

Discussion

<u>Excluded Driver Provision</u>
The Named Driver Exclusion provides:

You have named the following persons in your household as excluded drivers under this policy.

| <u>Excluded Driver Name</u> | <u>Relationship</u> | <u>Birthdate</u> |
|---|---|---|
| Daniel Brill | Non-Relative-Other | January 7, 1987 |

No coverage is provided for any claim arising from an accident or loss involving a motorized vehicle being operated by an excluded driver. This includes any claim for damages made against any named insured, resident relative, or any other person or organization that is vicariously liable for an accident or loss arising out of the operation of a motorized vehicle by the excluded driver.
(Motion for Summary Judgment, pg. 4, ¶ 9; see Alfa Policy, Exh. 3, Form 14 PA MO AP(1/11)).

The parties are agreed that the Ellis liability coverage excluded such coverage for Brill, the driver of her car, and Alfa acknowledges that, as a passenger in her car Blizzard

3

would normally have categorical insured status in the uninsured motorist provisions. On Blizzard's behalf, claimant contends that there is a genuine issue of material fact as to whether Brill had express or implied permission to operate the vehicle.[4] Alfa argues that the policy provision identifying Brill as an *excluded* driver is unambiguous, leaving no genuine issue of material fact on the question of whether he had implied permission to operate the Grand Am.

Alfa relies on several cases in support of its argument, the most factually similar of which may be found in the opinion of the Missouri Court of Appeals in <u>Yates v. Progressive Preferred Insurance Company</u>, 331 S.W.3d 324 (Mo.App. W.D. 2011). In <u>Yates</u>, an accident occurred while a named excluded driver, the wife, operated an automobile and collided with a motorcycle. <u>Id</u>, at 325. The motorcycle driver obtained a judgment against the wife and then sought, but was denied, equitable garnishment from the insurer. <u>Id</u>. After determining that the driver of the vehicle was an excluded driver under the policy, the trial court granted summary judgment in favor of the insurer. <u>Id</u>.

On appeal, the plaintiff motorcycle driver claimed, among other things, that the exclusion provision could not exclude persons operating the vehicle with the express permission of the insured because such persons are required to be covered pursuant to the Motor Vehicle Financial Responsibility Law "MVFRL" 303.190.2(2). Id, at 325-26 n. 2. The appellate court tangled with a seeming conflict between two statutes relied upon by the respective parties, i.e. sections 303.190(2) and the later amended section 303.190(3)

---

[4] Claimant also contends that the named driver exclusion provision is actually noted on an insurance policy covering a Ford F250, as opposed to the vehicle involved in the accident which was a 1997 Pontiac Grand Am. In response to this contention, Alfa has presented a copy of a supplemental policy indicating that the Grand Am was added as an insured vehicle on February 22, 2001, prior to the date of the accident. (Reply Brief: SAUMF ¶ 14, Exh. 4, pg. 47).

4

of the MVFRL. Id, at 326-28. [5] The court noted that where two statutory provisions covering the same subject matter are unambiguous when read separately but conflict when read together, the reviewing court must attempt to harmonize them and give effect to both. Id, at 327; citing, Anderson v. Ken Kauffman & Sons Excavating, 248 S.W.3d 101, 107 (Mo.App. W.D. 2008). In so doing, the court found that the purpose of the MVFRL under section 303.190(2), was to ensure that persons injured on Missouri highways may collect at least minimal damage awards against negligent motor vehicle operators. Yates, at 331. The amendment of the MVFRL with the addition of 303.190(3), however, evidenced yet another important purpose of the law, which is to encourage all owners to obtain coverage by removing a cost-impediment to obtaining coverage and to encourage owners not to allow uninsured drivers to operate their vehicles. Id. Persuaded by the underlying purpose of the MVFRL, and notwithstanding the court's acknowledgment that the wife was operating the vehicle with the full knowledge and consent of her husband (the named insured), the court affirmed the trial court's decision that based on the named excluded driver provision, the insurer was not obligated to defend or indemnify the driver and the insurance company was entitled to summary judgment.

---

[5]The MVFRL requires all automobile liability insurance policies to:

> insure the person named and any other person, as insured, using any such motor vehicle or motor vehicles with the express or implied permission of such named insured, against loss from the liability imposed by law for damages arising out of the ownership, maintenance or use of such motor vehicle … subject to limits, exclusive of interest and costs, with respect to each such motor vehicle as follows: (statutory minimums are stated). Yates, at 326.

Section 303.190(2) requires every liability policy to cover *any* driver of a covered vehicle having the permission of the named insured against loss from liability imposed by law up to the *statutory minimums*. Yates, at 327.

Section 303.190(3) allows a named insured to exclude a named driver from coverage under a policy. Id.

There are noteworthy differences between the facts of <u>Yates</u> and here. First, the named excluded driver in <u>Yates</u> was the wife of the named insured who was sitting beside her in the passenger seat at the time of the accident; thereby evincing express permission to operate the vehicle, whereas here, there is no evidence tending to show that Brill had either the express or implied permission of Ellis to operate the Grand Am. Secondly, although the court in <u>Yates</u> did not directly deal with the question of whether express or implied permission to an named excluded driver is determinative for insurance coverage, in reviewing cases from other states on the question of denial of coverage where a named excluded driver operated a vehicle involved in an accident, the court found that the exclusion was permissible, even when pre-amended statutes declared such insurance provisions invalid as against public policy. <u>Yates</u>, at 330.[6]

The <u>Yates</u> court noted that states which permit named driver exclusions, depending on the law of the particular state, usually find guidance from public policy that favors such provisions. <u>Id</u>. The court reasoned that policies containing exclusion provisions enable drivers with family members having poor driving records to procure affordable insurance, rather than obtaining coverage from an assigned risk pool at a greater cost or not securing insurance at all. <u>Id</u>. This reasoning furthers that initial legislative purpose of the MVFRL to ensure that persons injured on Missouri highways may collect at least minimal damage awards against negligent motor vehicle operators. <u>Id</u>, at 326. Additionally, because these policy exclusions subject automobile owners to personal liability, they deter these owners from negligently entrusting their automobiles to unsafe excluded drivers, which helps to keep these drivers off of the roads. <u>Id</u>, at 331.

---

[6] <u>Citing</u>, <u>Farmers Ins. Exch. v. Dotson</u>, 913 P.2d 27, 32 (Colo. 1996)

Claimant argues that Alfa has failed to "conclusively" show that Brill did not have permission to drive the Grand Am, and likewise, has failed to show that Blizzard did not have a reasonable belief that he was entitled to occupy the vehicle. In support of this argument Campbell relies on LeCave v. Hardy, 73 S.W.3d 637 (Mo.App. 2002). There, the LeCaves commenced suit against the defendant father, James Hardy, for negligently entrusting his vehicle to his son who then hit and killed the LeCave's son as he rode his bicycle. Id, at 639. On appeal, after summary judgment was granted to Hardy, the Court of Appeals reversed and remanded after finding sufficient evidence for a jury to find that Hardy gave implied permission for his son to drive the vehicle. Id. The court's finding was compelled by evidence that the son previously drove the vehicle with the father's permission, and that the keys were left in the ignition on the night of the accident when the father knew his son's car was inoperable and would likely need to use a car to get to and from work and school. Id.

The facts in LeCave are distinguishable from those at bar in that the issue presented was whether Hardy, as owner of the accident vehicle, negligently entrusted the vehicle to his son and was therefore liable for damages sustained by the bicycle rider injured in an accident negligently caused by Hardy's son. This case did not involve a question of whether an insurance company can be required to provide coverage for damages sustained when a named excluded driver negligently causes a motor vehicle accident. As noted by the court in Yates, in cases where exclusionary language has been included in an insurance policy *personal* liability then lies with the insured. Here too, the named driver exclusion is clear, and for reasons cited above in Yates, serves a stated legislative purpose. Although, as in LeCave, personal liability in this case may lie with

the named insured there is no genuine issue of material fact that as a named excluded driver insurance coverage was properly denied as to Brill. Thus, Alfa prevails on this question.

<u>Uninsured Motorist Coverage</u>

Part C (1): Uninsured Motorists Coverage

Insuring Agreement

We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" because of "bodily injury" sustained by an "insured".

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "uninsured motor vehicle."

Additional Definitions

When used in this Part"

A. "Insured" means:
Any other person "occupying" "your covered auto."
"Occupying" means in, upon, getting in, on, out or off
(Motion for Summary Judgment, pgs. 4-5; see Alfa Policy, Exh. 3, pgs. 5, 15-16).

Exclusions under the uninsured motorist coverage provide that:

B. We do not provide Uninsured Motorists Coverage for "bodily injury" sustained while any insured operates or occupies a motor vehicle:

   1. Owned by;

   2. Furnished to; or

   3. Available for the regular use of; you, or a relative, but not insured for Auto Liability coverage under this policy. It also does not apply if any insured is hit by any such motor vehicle.

C. We do not provide Uninsured Motorists Coverage for "bodily injury" sustained by any "insured:"

***

4. Using a vehicle without a reasonable belief that that "insured" is entitled to do so. This Exclusion (C.3) does not apply to a "family member" using "your covered auto" which is owned by you.
(Motion for Summary Judgment: pgs. 5-6; Alfa Policy, Exh 3. pgs. 16-17).

***

Alfa states that as defined by the insurance policy, Part C (1) (A), Blizzard was an *insured,* but is excluded from coverage because he was using or occupying the vehicle while it was driven by Brill – an excluded driver under the policy – thus, without a reasonable belief that he was entitled to do so. (Motion for Summary Judgment: pg. 14). According to Alfa, the uninsured motorist coverage is excluded by virtue of the fact that Blizzard occupied the vehicle while it was operated by a named excluded driver; it was not necessary that Blizzard had actual knowledge of this fact. (Id: pg. 15). Alfa subsequently argues that because at the time of the accident Brill was driving as an excluded driver, the vehicle itself was not covered under the auto liability insurance coverage. (Reply Brief: pg. 7). Therefore, while technically considered to be an *insured,* uninsured motorist coverage for Blizzard remains elusive because the auto was not covered at the time. In both instances, Alfa relies on <u>Marchand v. Safeco Ins. Co. of America</u>, 2 S.W.3d 826 (Mo.App.E.D. 1999).

Claimant contends that Blizzard held a reasonable belief that he had permission to use the vehicle as a passenger, and Alfa has failed to present any evidence to the contrary. In reliance on <u>LeCave</u>, Claimant argues that there is a reasonable inference that Ellis gave permission or at least acquiesced to Brill driving the Grand Am because he may have needed the use of a car to get back and forth to work and school, and there is no evidence that Ellis forbade Blizzard from occupying the vehicle.

9

Neither case relied on by the parties is persuasive on the issue of uninsured motorist coverage under the circumstances of this matter. In <u>Marchand</u>, the plaintiff, 14 years of age, was a passenger in a car driven by Pogue, who was 13 years of age at the time. 2 S.W.3d, at 827. While speeding, Pogue lost control of the vehicle, struck a utility pole, and Marchand was thrown into the windshield sustaining injuries. <u>Id</u>, at 826-27. At the time of the accident, the Pogue vehicle was uninsured, so the Marchands sued their insurance company, Safeco, under the uninsured motorist provision of the policy which provided in relevant part that there was no provision for uninsured motorist coverage for any person "using a vehicle without a reasonable belief that that person has permission to do so". <u>Id</u>, at 828.

The parties argued about the term of "use" as it applied to a *passenger* as opposed to someone *operating* a vehicle and the court ultimately held that, as a passenger, Marchand was  a non-permissive "user" of the vehicle and coverage was excluded. However, to the extent the disputed provision in <u>Marchand</u> is considered a "permissive use" clause as opposed to, as here, an "entitlement" clause, it is somewhat distinguishable because the latter differs from the "permissive use" clause in at least three respects. <u>See</u>, CJS Insurance § 1505  (updated June 2013). First, the standard changes from an objective one (permission) to one that is both objective (reasonableness) and subjective (belief). <u>Id</u>. Second, the new clause speaks in terms of entitlement rather than permission; and third, the new clause shifts the focus from the owner's perspective to the driver's. <u>Id</u>.

In other words, under facts such as here where the policy provision in question turns on an entitlement question as to usage, the person "using" the vehicle must have had a belief that he or she had permission and the belief must have been rational.

Marchand, 2 S.W.3d at, 829; citing, Omaha Property & Casualty Insurance Company v.

Peterson, 865 S.W.2d 789, 790 (Mo.App. W.D. 1993). The court in Peterson noted

factors to be considered for determining whether a belief was reasonable. Id, at 791.[7]

These factors have continued to be considered by courts in this district since development

in Peterson. See, Hawkeye-Security Insurance Company v. Bunch, 643 F.3d 646, 652 (8th

Cir. 2011). However, here, the briefing presented is silent as to evidence relating to the

enumerated factors tending to establish that there is no genuine issue of a material fact on

this issue.

I conclude that insofar as Alfa is relying on exclusion B, the exclusion is

inapplicable and does not serve Alfa's purpose here. It simply relates to vehicles involved

in the injury, and we are not dealing with a vehicle "not insured for Auto Liability

coverage under this policy." As to exclusion C, there are issues of fact that cannot be

resolved on the present record. Thus, I would deny the motion for summary judgment for

further development of the facts if that was necessary to a decision on Blizzard's right to

recover under the uninsured motorist coverage.

As argued by Alfa without citations or much articulation, however, there is an

overriding consideration applicable to this case that in my judgment trumps any claim for

recovery. With respect to Brill, the excluded driver, the policy clearly (and I believe

comprehensively) states that there is no coverage "for any claim arising from an accident

… involving a motorized vehicle being operated by an excluded driver."

---

[7] These factors include: (1) whether the driver had express permission to use the vehicle; (2) whether the driver's use of the vehicle exceeded the permission granted; (3) whether the driver was "legally" entitled to drive under the laws of the applicable state; (4) whether the driver had any ownership or possessory right to the vehicle; (5) whether there was some form of relationship between the driver and the insured, or one authorized to act on behalf of the insured, that would have caused the driver to believe that he was entitled to drive the vehicle. Peterson, at 791.

Claimant's only response is to assert it relates to insured's Ford car, not her Pontiac. But, as noted earlier, the Pontiac was added to coverage by endorsement on February 22, 2011. Exh. 4 to Doc. 36, page 52. While it could be argued by the claimant that this exclusionary language does not necessarily apply to uninsured motorist coverage there seems no good reason why it would not. To the extent claimant may rely on ambiguity, seeking to confine the named driver exclusion to provisions other than the uninsured motorist coverage, claimant is seeking to impose a limitation that does not appear in the policy. Alfa says "any claim" means "any claim," if it arises from an accident in a vehicle operated by Brill. Even if I should acknowledge some degree of ambiguity, a fair reading of the policy would, in my judgment, give controlling effect to the specific language applying to Brill's conduct rather than trying to read something favorable to claimant in the general language that appears elsewhere. I believe a Missouri court would so rule, particularly when the public policy questions have been dealt with in the <u>Yates</u> case, giving ungrudging effect to the latest statute that allows the exclusion on which Alfa relies.

The Eighth Circuit has repeated the well-known and frequently used rule of construction that "Specific contractual terms should govern over more general ones." <u>Auto Club Ins. Ass'n v. Sentry Insurance</u>, 683 F.3d 889, 893 (8th Cir. 2012). This concept is accepted by the Missouri Courts. <u>General American Life Ins. Co. v. Barrett</u>, 847 S.W.2d 125, 133 (Mo.App. 1993) ("A pertinent rule of construction is that specific terms and provisions of a contract are given preference over general ones."). The ordinary rules of contract construction apply in construing insurance policies because insurance policies are contracts. <u>Id</u>, 130.

If significant here, I must also consider the rule favoring parties to ambiguous contracts, when the other party wrote the contract. Fairness to the party signing a document prepared by another requires giving her the benefit of the doubtful language when there is an objective likelihood she will be misled. But careful use should be made of that guideline, because provisions in insurance policies are " 'often … practicably unintelligible and generally never read.' " <u>Id</u>, 130.

In this case it seems fanciful to suppose that the named insured would be contractually seeking benefits for the passenger in her car, when driven by her boyfriend, whom she has expressly chosen not to insure. Nor would even a very careful person likely parse the difficult language in exclusion C to see if there might be a loophole, covering the quality of Brill's driving. It would generally never be studied – as contrasted with the plain language declaring that Brill's driving is not covered. Using the "rule favoring insureds" here would be relying on incantation rather than good sense. While sympathy for a victim's family might well exist, the sound resolution of this case seems clearly favorable to Alfa.

Accordingly, it is hereby

ORDERED that the motion for summary judgment (ECF doc. 31) is GRANTED. The clerk of the court is directed to enter judgment in favor of plaintiff insurer.

<u>/s/ Howard F. Sachs</u>
HOWARD F. SACHS
UNITED STATES DISTRICT JUDGE

September 10, 2013

Kansas City, Missouri